UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

OVERSEAS MEDIA, INC.,
WINBURGH HOLDINGS, LTD., and
OOO NOVYI RUSSKII SERIAL,                              04 Civ. 5133 (RJH)

               Plaintiffs,

  - against -

                                          **MEMORANDUM
                                          OPINION AND ORDER**

SERGEI SKVORTSOV

               Defendant.
-----------------------------------------------------------x

       Plaintiffs Overseas Media, Inc. ("Overseas Media"), Winburgh Holdings, Ltd. ("Winburgh"), and OOO Novyi Russkii Serial ("NRS") bring this action alleging violations of federal and New York copyright and trademark law, as well as unfair competition under New York law, and request a preliminary and permanent injunction enjoining defendant Sergei Skvortsov from promoting, marketing, licensing, broadcasting or otherwise attempting to sell or to distribute a Russian television program, *Nashtoyashie Menty*, within the United States. By opinion dated January 3, 2006, this action was dismissed with respect to defendant Phoenix Film for lack of personal jurisdiction. *Overseas Media, Inc. v. Skvortsov et al.*, 407 F. Supp. 2d 563 (S.D.N.Y. 2006). Defendant Skvortsov, a citizen of both the United States and Russia presently residing in Russia, does not contest personal jurisdiction; however, he moves the Court to dismiss this action pursuant to the doctrine of *forum non conveniens*. For the following reasons, the motion is granted.

**BACKGROUND**

Much of the factual background and procedural posture of this case is set forth in the Court's previous opinion, familiarity with which is presumed. In sum, as noted at oral argument held on April 6, 2006, plaintiffs in this action accuse defendant of having a "business plan to distribute" defendant's *Nastoyashie Menty* (in English, "*New Menty*"), his version of the hit Russian television show *Ulitsy Razbitykh Fonarei: Menty* (in English, *Streets of Broken Streetlights: The Cops*, and popularly known as "*Menty*") in the United States. (Apr. 6, 2006 Tr. at 16.) As plaintiffs' complaint puts it, "as described above [referencing an alleged offer to sell United States broadcasting rights to *Nastoyashie Menty* to plaintiff Overseas Media], Skvortsov and [former co-defendant Fenix] are actively seeking to enter into additional licensing agreements for the rights to broadcast *Nastoyashie Menty* in the United States and elsewhere in the very near future." (Compl. ¶18.)

It is worth noting that the ownership over the rights to the intellectual property in question here is in sharp dispute. In support of its request for injunctive relief, plaintiff Overseas Media has previously asserted exclusive ownership over the satellite and cable broadcast rights to *Menty* in the United States; plaintiff Winburgh claims it holds the "exclusive right to prosecute infringement actions in respect of home video rights to *Menty* in the United States … and the exclusive over-the-air broadcast rights to *Menty* within the United States," while plaintiff NRS asserts ownership over "all rights to *Menty* within the United States … that are not held by either Overseas Media or Winburgh," including so-called "continuation rights" to the further development of the series. (Sept. 13, 2004 Decl. of Daniel M. Mandil, ¶3, ¶50.)

These assertions, however, were made prior to the discovery of an erroneous translation of one of the Russian contracts, upon which plaintiffs relied to demonstrate their ownership of the rights to *Menty*. Plaintiffs originally represented to the Court that their rights flowed ultimately from an exclusive transfer of rights from the creator of the Russian short stories on which *Menty* is based. The author of these stories, Pimenov Andrei Vladimirovich, who uses the pen name Andrei Kivinov, entered into an agreement in April 9, 1999 with an Alesandr Petrovich Kapitsa, who was at the time the "General Director of St. Petersburg AOZT 'IR'," apparently a Russian company. (Sept. 13, 2004 Decl. of Daniel M. Mandil, ¶4(a).) This agreement apparently settled in Kapitsa's favor the issue of whether Kapitsa had possessed the right to transform twenty-three short stories into forty-one episodes of *Menty*.[1] A supplemental agreement, dated June 2, 1999, appears to have given Kapitsa the right to additional works by Kivinov, and authorized the production of several other episodes of *Menty*. (June 2, 1999 Agreement between Andrei Vladimirovich Pimenov and Alexander Petrovich Kapitsa, translated from the Russian on October 4, 2004.)

Defendant, however, observed that these agreements were actually mistranslated. As clarified in an October 4, 2004 letter to the Court from plaintiffs, the English translation of these contracts described the rights transferred to Kapista as an "exclusive right," while the original Russian described it expressly as a "non-exclusive right." Thus

---

[1] Essentially, plaintiffs asserted, these rights then passed from Kapitsa, and another Kapitsa-controlled entity, Russkoye Video Film to TNT, a Russian over-the-air channel. As defendant notes, however, plaintiffs have produced no agreements demonstrating how these rights moved from Kapitsa and IR to Russkoye Video Film. (Def.'s Oct. 7, 2004 letter to the Court at 3 n.4.) However it received these rights, TNT then passed what plaintiffs describe as a "panoply of rights," including continuation rights to the Menty characters and storyline, to plaintiff NRS in an agreement dated February 22, 2000. (Sept. 13, 2004 Mandil Decl.. Ex. 1.) NRS distributed certain of these rights to plaintiffs Overseas and Winburgh, leaving them, according to plaintiffs, with the particular rights as noted above.

Kivinov retained the right to use his literary works. Since plaintiffs could no longer claim the exclusive right, they reformulated their argument to assert that "[t]he extent to which Kivinov retained rights to the literary works on which the initial episodes of *Menty* were based is … irrelevant. *Nastoyashie Menty* is an unauthorized knock-off of the *Menty* television series, not an authorized derivative of the Kivinov stories." (Pls.' Oct. 4, 2004 letter to the Court at 2). Plaintiffs further argued that they held all rights to the *Menty* television program, if not to the stories on which it was based, and pointed to case law that those who introduce new expressive elements in a derivative work hold a copyright to "those elements original to" the derivative work. (*Id.* at 4).

In response to this argument, defendant contends that the April 9, 1999 agreement between Kivinov and Kapitsa was a settlement agreement "resolving their dispute as to Mr. Kapitsa's prior infringing use of Mr. Kivinov's literary works in creating the audiovisual works. (Def's Oct. 7, 2004 letter to the Court at 2.) Indeed, the English translation of the first two paragraphs of this agreement, as appended to plaintiffs' October 4, 2004 letter, appears to reflect such an understanding.[2] As such, defendant asserts that the agreement merely settled Kivinov's claim against Kapitsa regarding the extant episodes of *Menty* as named in paragraph 3 of the agreement, and specifically reserved the continuation rights regarding the episodes. Thus, according to defendant, "Kivinov is free to contract with others, including [former defendant] Phoenix, to

---

[2] "When the television series *Streets of Broken Streetlights* was created by [Kapitsa], both as general director of IR CJSC and as an individual author of screenplays for the series, numerous violations of the copyright of writer [Kivinov] … were committed, and this was reflected in [Kivinov's Claim of March 22, 1999, served that same day on Kapitsa] … In order to resolve the resulting situation, and to minimize the property damage and pain and suffering inflicted on writer [Kivinov], [the parties] have voluntarily, by mutual consent, entered into this Agreement with the following terms and provisions." (Apr. 9, 1999 Agreement between Andrei Vladimirovich Pimenov and Alexander Petrovich Kapitsa, translated from the Russian on Oct. 4, 2004.)

produce into video format any of his stories, even the stories that underlie the original *Menty* series contained in his 1999 agreements with Kapitsa. (Def.'s Reply Mem. at 3.)

Defendant has indeed submitted a declaration from Kivinov himself, who, according to the Complaint, has acted as a consultant to defendant on the *Nastoyashie Menty* project (Compl. ¶73), and avers that he has not transferred the rights to his literary works to plaintiffs. (July 19, 2004 Declaration of Andrei Vladimirovich Pimenov, translated from the Russian as Exhibit F to the Declaration of Sergei Skvortsov.) Defendant has also submitted a declaration from a Russian attorney, Irina Tulubjeva, who contends that the producers of *Nastoyashie Menty* are proceeding in accordance with Russian Federation law on copyright and trademark. (July 27, 2004 Declaration of Irina Tulubjeva, translated from the Russian as Exhibit D to the Declaration of Sergei Skvortsov.) The Court, of course, does not resolve the parties' competing claims at this stage but notes them only for their relevance to defendant Skvortsov's *forum non conveniens* motion, based as it is on the argument that this dispute involves claims to intellectual property that arise under Russian law, and that most of the events in issue allegedly occurred there.

## DISCUSSION

The doctrine of *forum non conveniens* allows a district court to dismiss a case where the preferred venue is a foreign tribunal. *Gross v. British Broadcasting Corp.*, 386 F.3d 224, 229 (2d Cir. 2004) (confiding decision to dismiss an action based on *forum non conveniens* "to the sound discretion of the district court"); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981) (dismissal on *forum non conveniens* grounds "will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the

5

defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice"). The defendant moving for dismissal "on *forum non conveniens* grounds bears the burden of proof." *Strategic Value Master Fund, Ltd. v. Cargill Financial Services, Corp.*, --- F. Supp. 2d ----, 2006 WL 738171, at *7 (S.D.N.Y. 2006) (citing *Aguinda v. Texas*, 303 F.3d 470, 477 (2d Cir. 2002)). In making the determination, the district court is free to consider submissions by the parties without converting a *forum non conveniens* motion into a motion for summary judgment. *See Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 645 (2d Cir. 1956) (citing *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 531-32 (1947) ("[I]n the determination of a motion to dismiss for forum non conveniens, the court may consider affidavits submitted by the moving and opposing parties.")); *see also Ayyash v. Bank Al-Madina*, 2006 WL 587342, at *8 (S.D.N.Y. Mar. 9, 2006) (finding the *forum non conveniens* inquiry premature in a case where limited jurisdictional discovery was expected, which would "aid the Court in determining the extent to which events and evidence in the United States are implicated in the dispute, and thus the level of deference to be accorded to [plaintiff's] choice of forum").

The analysis upon a motion to dismiss for *forum non conveniens* will proceed in several stages. *Pollux Holding Ltd. v. The Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003). "At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum."

*Norex Petroleum Ltd. v. Access Industries, Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (citing *Iragorri v. United Technologies Corp.*, 274 F.3d 65 (2d Cir. 2001)).[3]

A.   *Choice of forum*

The Court will first consider the deference due to plaintiffs' choice of forum here. While "it is generally understood that … unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed," *Norex Petroleum Ltd.*, 416 F.3d at 154 (2d Cir. 2005), the doctrine, by definition of course, "contemplates the dismissal of lawsuits brought by plaintiffs in their favored forum." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 101 (2d Cir. 2000). Thus, the "degree of deference" to be given to a plaintiff's choice of forum "moves on a sliding scale depending on several relevant considerations." *Iragorri*, 274 F.3d at 71. In determining the amount of deference to give a plaintiff's choice of forum, a court should consider factors including, *inter alia*, the availability of witnesses or evidence in the forum, the defendant's amenability to suit in the forum, and whether the plaintiff chose the forum for forum-shopping reasons." *ICC Indus., Inc. v. Israel Discount Bank, Ltd.*, 2005 WL 1844616, at *5 (S.D.N.Y. July 29, 2005), *aff'd by ICC Indus. Inc. v. Israel Discount Bank, Ltd.*, 2006 WL 695780 (2d. Cir. Mar. 16, 2006) (unpublished opinion).

---

[3] Some courts have articulated the sequence of steps in a *forum non conveniens* examination slightly differently. "The first step in a *forum non conveniens* analysis is for the court to establish the existence of an adequate alternative forum … Second, the court must determine the level of deference to accord the plaintiff's choice of forum … Third, the court must weigh the public and private interests in order to determine which forum will be most convenient and will best serve the ends of justice." *USHA (India), Ltd. v. Honeywell Intern., Inc.*, 421 F.3d 129, 134 (2d Cir. 2005) (internal citations and quotations to *Bank of Credit & Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 246 (2d Cir. 2001) and others omitted).

Ordinarily, "the greatest deference is afforded a plaintiff's choice of its home forum, while less deference is afforded a foreign plaintiff's choice of a United States forum." *Norex Petroleum Ltd.*, 416 F.3d at 154. This is so because the presumption that a plaintiff's choice of forum was made for purposes of convenience will not apply to foreign plaintiffs. *Pollux Holding Ltd.*, 329 F.3d at 73 ("[W]hen a foreign plaintiff sues in a United States forum such choice is entitled to less deference because one may not easily presume that choice is convenient."); *Varnelo v. Eastwind Transport, Ltd.*, 2003 WL 230741, at *12 (S.D.N.Y. Feb. 3, 2003) ("Foreign plaintiffs deserve less deference, not because they lack U.S. citizenship, but simply because their overseas residence vitiates any presumption that they would find the U.S. forum convenient."). Even where a plaintiff selects its home forum, "a court considering a motion for dismissal on the grounds of *forum non conveniens* does not assign talismanic significance to the citizenship or residence of the parties, and there is no inflexible rule that protects U.S. citizen or resident plaintiffs from having their causes dismissed for *forum non conveniens*." *Pollux Holding Ltd.*, 329 F.3d at 73. (*See Scottish Air Int'l, Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224, 1232 (2d Cir.1996) (granting dismissal under *forum non conveniens* doctrine despite fact plaintiffs were a New York corporation and American individual, as under appropriate circumstances an "American plaintiff may be required to litigate abroad").

Here, only one of the three plaintiffs, Overseas Media, is located in the United States. (Compl. ¶24.) NRS is located in Moscow, where it is, as discussed *infra*, apparently embroiled in litigation over ownership to the intellectual property at issue here, and Winburgh is located in the British territory of Gibraltar. (Id. at ¶¶24-26.) *Alcoa S. S. Co., Inc. v. M/V Nordic Regent*, 654 F.2d 147, 156 (2d Cir. 1978) (sending

8

American citizen to another forum for trial and noting proposition that an American citizen does not have an absolute right under all circumstances to sue in an American court); *Base Metal Trading SA v. Russian Aluminum*, 253 F.Supp.2d 681, 694-95 (S.D.N.Y. 2003) (viewing plaintiffs' forum choice less deferentially where only some plaintiffs in amended complaint were located in U.S.).

Furthermore, Overseas Media, according to its Russia-based attorney, Alexsandr Berezin, is wholly owned by Media Most International, Inc., and plaintiffs have not contested defendant's assertion that Media Most is a Russian entity. (*See* June 28, 2004 Decl. of Alexsandr Berezin, ¶ 6 ("Berezin Decl."); Def.'s Mem. at 32.) *Norex Petroleum Ltd.*, 416 F.3d at 154-55 ("Less deference is given to plaintiff's choice … when suit in the international forum was foreseeable in light of the transaction, and when the plaintiff is an organization—rather than an individual—that can easily handle the difficulties of engaging in litigation abroad."); *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 238 (2d Cir. 2004) ("For an individual of modest means, the obligation to litigate in a foreign country is likely to represent a considerably greater obstacle than for a large business organization—especially one maintaining a business presence in foreign countries.").

While there is little to indicate raw forum-shopping on the part of plaintiffs here (particularly considering one is New York-based),[4] the Court does find that the inconvenience of this forum is quite clear. Already, the Court has dismissed one Russian

---

[4] "Circumstances generally indicative of forum shopping, that is, plaintiff's pursuit not simply of justice but of justice blended with some harassment, include [1] attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, [2] the habitual generosity of juries in the United States or in the forum district, [3] the plaintiff's popularity or the defendant's unpopularity in the region, or [4] the inconvenience and expense to the defendant resulting from litigation in that forum." *Norex Petroleum Ltd.*, 416 F.3d at 155.

9

defendant from this action as outside this Court's personal jurisdiction, no party disputes that ownership to the rights in question turn on the force and meaning of contracts entered in Russia under Russian law, and no witnesses or evidence with respect to the central dispute over the right to produce this sequel series may be found in this forum. "The central purpose of any *forum non conveniens* inquiry is, after all, to ensure that the trial is convenient," and the reason that "great deference is generally afforded a plaintiff's choice of its home forum is because it is presumed to be convenient." *Norex Petroleum Ltd.*, 416 F.3d at 154 (internal citations and quotations omitted); *Gross*, 386 F.3d at 233 (noting that "the convenience of the parties [is] the primary consideration" where "the subject matter of this suit is not like a real property action with a physical connection to a particular location. Rather, the subject matter is creative work—intellectual property— and so the suit itself has less natural connection to any particular forum."). Such convenience here is clearly lacking. Accordingly, while the Court will indeed credit plaintiffs' choice of New York as the forum for this action to a significant degree, due to the fact that one of the three plaintiffs is located in New York, the choice will be viewed in a light that departs to a limited degree from the typical deference normally afforded to a domestic plaintiff.

### B. *Existence of an adequate alternative forum*

Secondly, the Court must consider the existence of an adequate, alternative forum for this matter. "Ordinarily, this requirement will be satisfied when the defendant is amenable to process in the other jurisdiction. In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative." *Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d

10

681, 698 (S.D.N.Y. 2003); *Capital Currency Exchange N.V. v. National Westminster Bank PLC*, 155 F.3d 608, 609 (2d Cir. 1998) ("An alternative forum is adequate if: (1) the defendants are subject to service of process there; and (2) the forum permits litigation of the subject matter of the dispute.")

Here, defendant Skvortsov, as a Russian citizen currently residing in Russia is clearly amenable to service of process in Russia. However, plaintiffs have alleged in their moving papers and at oral argument (Apr. 6, 2006 Tr. at 44) that the "ultimate controlling person of the plaintiffs," Vladimir Gusinski, is *persona non grata* in the eyes of the Russian government. This perhaps raises the specter that the litigation process in a Russian forum might suffer from corruption.[5] It is not "the business of our courts to assume responsibility for supervising the integrity of the judicial system of another sovereign nation." *Blanco v. Banco Industrial de Venezuela, S.A.*, 997 F.2d 974, 982 (2d Cir. 1993); *see also Piper*, 454 U.S. at 254 n.22 ("In the absence of extraordinary circumstances, as where the foreign court does not allow for litigation of the subject matter of the dispute or for recovery, amenability of process is sufficient to render a foreign forum adequate."); *Corporacion Tim, S.A. v. Schumacher*, 2006 WL 522445, at *3 (S.D.N.Y. Mar. 1, 2006) ("American courts should be wary of branding other nations' judicial forums as deficient in the substance or procedures that their laws contain …. Such denunciations not only run counter to principles of international comity and could retard efforts to reform foreign tribunals, but also risk imposing on our judicial system the burden of serving as courtroom to the world for the adjudication of essentially foreign disputes with only nominal connections with the United States."); *Acosta v. JPMorgan*

---

[5] The declaration from Alexsandr Berezin, Overseas' Russian-based counsel, indicates that defendant, at their meeting in Moscow, threatened retaliation against Gusinski if any action to prevent the broadcast took place, and commented that Russian officials had assured defendant that he would prevail in any such action. (Berezin Decl. ¶ 7.)

*Chase & Co.*, 2006 WL 229196, at *6 (S.D.N.Y. Jan. 30, 2006) ("The 'alternative forum is too corrupt to be adequate' argument does not enjoy a particularly impressive track record.") (quotation omitted); *Aguinda v. Texaco*, 1994 WL 142006, at *2 (S.D.N.Y. Apr. 11, 1994) ("[T]he courts of the United States are properly reluctant to assume that the courts of a sister democracy are unable to dispense justice.")

Furthermore, any assertion that a Russian court is an inadequate forum is undercut by the fact that at least one plaintiff in this action is a Russian entity that is a party to a related infringement action regarding the series at issue, presently pending in Russia. Plaintiffs themselves have relied on the existence of this action in requesting the Court to limit the relief it seeks via injunction, *Overseas I*, 407 F.Supp.2d at 574 n.6, and their own description of this copyright infringement action, pending in the Leninsky District Court in St. Petersburg, Russia, satisfies the Court that a sufficient analogue to plaintiffs' causes of action here will be available in Russia. *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 74 (2d Cir. 1998) ("The availability of an adequate alternate forum does not depend on the existence of the identical cause of action in the other forum.") Therefore, the Court finds that defendant has borne his burden of demonstrating the availability of an adequate alternative forum.

### C. *Private and public factors*

The Court will next consider the private and public interest factors enumerated by the Supreme Court in *Gulf Oil v. Gilbert*, 330 U.S. 501, 508-09 (1947) in considering whether to exercise its jurisdiction. The private factors include "access to sources of proof, cost of obtaining willing witnesses, availability of compulsory process for unwilling witnesses, and other practical concerns" that make trial easy, expeditious, and

inexpensive. *PT United Can Co. Ltd.*, 138 F.3d at 73-74; *Realuyo v. Villa Abrille*, 2003 WL 21537754, at *13 (S.D.N.Y. July 8, 2003). The public factors include "court congestion, interest of forums in deciding local disputes, and interest in issues of foreign law being decided by foreign tribunals." *PT United Can Co. Ltd.*, 138 F.3d at 73-74; *Acosta*, 2006 WL 229196, at *8.


*Private interest factors*

As defendant points out, an overwhelming proportion of the witnesses and evidence in this action is concentrated in Russia. *SMT Shipmanagement & Transport Ltd. v. Maritima Ordaz C.A.*, 2001 WL 930837, at *7 (S.D.N.Y. Aug. 15, 2001) (dismissing on *forum non conveniens* grounds where evidence concentrated in Venezuela). These witnesses includes the parties to the underlying agreements; Skvortsov himself; Berezin, the Overseas attorney who received Skvortsov's alleged offer of the broadcasting rights to the series; Davletkahanov, the Phoenix employee who was the maker of the second alleged offer of rights to the series, and the myriad parties involved in the conception and production of the allegedly infringing television program. *Overseas I*, F. Supp. 2d at 565-66.

Moreover, as communication with the Court over mistranslation has revealed, the language barrier surely factors into the analysis here. Correction of one erroneous translation has already fundamentally changed plaintiffs' position with respect to the rights they claim to the intellectual property at issue; the vast majority of all other documentary evidence, presumably at Phoenix's and other offices in Russia, will likewise be written in Russian. *See Acosta*, 2006 WL 229196 at *8 (collecting cases regarding impact of language barrier on private interest analysis and noting that the burden of

13

foreign language documentary evidence is appropriately considered "in this analysis, as it would affect the ease and financial costs of trial."); *Base Metal Trading SA*, 253 F. Supp. 2d at 712 ("The need for extensive document translation supports a finding that this forum is inconvenient.")

*Public interest factors*

      With respect to the *Gilbert* public interest factors, these also weigh in favor of dismissal of this action. Although the burden here rests on the defendant, "there is no indication that courts in the [Russian Federation] are any more congested than the busy courts in this District." *Corporacion Tim, S.A.*, 2006 WL 522445, at *6. The production of this Russian language sequel in Russia also persuades the Court that Russia "is the forum with the most significant contacts with and the greatest interest in the adjudication of this case." *Id.* The contracts regarding the disputed rights at issue were negotiated in Russia by Russian parties. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. BP Amoco, P.L.C.*, 2003 WL 21180421, at *9 (S.D.N.Y. May 20, 2003) ("[The] United States has more of an interest in deciding this controversy than does the United Kingdom, because the contracts at issue were negotiated here"); *Diatronics, Inc. v. Elbit Computers, Ltd.*, 649 F.Supp. 122, 128 (S.D.N.Y. 1986) (relying on place of contract negotiation in holding that foreign forum was more convenient).

      While plaintiffs are claiming infringement of U.S. copyrights, these claims are premised on plaintiffs' alleged possession of worldwide rights held pursuant to Russian contracts. Therefore, it is abundantly clear that resolution of this action—determination whether *Nastoyashie Menty* is a legally authorized production and whether plaintiffs actually hold the worldwide rights they claim—will necessarily implicate questions of

14

Russian contract and copyright law. While "the fact that foreign law applies [in any given case] is not in itself sufficient to render [Russia] the more convenient forum, [as] federal courts must often apply foreign law, and the means of pleading and proving foreign law are provided in the Federal Rules of Civil Procedure," *Nat'l Union Fire Ins. Co.*, 2003 WL 21180421, at *10, here, the ability to parse the exact nature of the rights possessed by plaintiffs has already been hindered by mistranslated submission of certain Russian contracts. "When deciding a *forum non conveniens* motion, a court may properly rely on the difficulties attending the resolution of questions of foreign law." *Scottish Air Intern., Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996); *see also Piper Aircraft*, 454 U.S. at 251 ("[T]he public interest factors point towards dismissal where the court would be required to untangle problems in conflict of laws, and in law foreign to itself.") (internal citations omitted)*, Calavo Growers v. Generali Belgium*, 632 F.2d 963, 967 (2d Cir. 1980) ("[T]he likelihood that Belgian law would govern in turn lends weight to the conclusion that the suit should be prosecuted in that jurisdiction."); *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 646 (2d Cir. 1956) ("In the first place, courts of one state are reluctant to impose liability upon a person who acts pursuant to a privilege conferred by the law of the place where the acts occurred."); *Beekmans v. J.P. Morgan & Co.*, 945 F. Supp. 90, 94 (S.D.N.Y. 1996) ("Dutch courts are far better situated to apply and interpret Dutch law.").

Moreover, although the parties were not particularly clear at oral argument as to the precise scope of such litigation, it appears that Russian plaintiff NRS has already been sued in at least three separate proceedings in Russian court regarding the ownership to the intellectual property in question. These include: a suit by the estate of Kapitsa against former defendant here, Phoenix; a suit by Kivinov against Russia Video Film over his

15

assignment of rights; and, a suit by Phoenix to declare invalid the underlying agreements between Russia Video Film and TNT, the entity that assigned the right to NRS. (Apr. 6, 2006 Tr. at 6-9.) Without the details regarding these actions, the Court declines to analyze in detail the deference to be given to these proceedings. Nevertheless, it is apparent that plaintiffs' claims are ill-suited to determination by a New York court and that the balance of interests strongly favor dismissal for *forum non conveniens*.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss [16] is granted. The Clerk is directed to close this case.

SO ORDERED.

Dated: New York, New York
      July 27, 2006

                                              Richard J. Holwell
                                            United States District Judge